IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIRECT MAIL HOLDING, LLC,
FOCUS DIRECT, LLC and
DIAMONDBACK DIRECT, LLC

        Plaintiffs,

v.

JUNE BUSH, LAURA M. BUSH,
CANDACE PEARL, PEARL
PRODUCTIONS, INC. and
OPULENT DETAIL DESIGNS, INC.

        Defendants.

_____/

Case No. 8:12-CV-145-T-30-EAJ

**DISPOSITIVE MOTION**

## DEFENDANTS' MOTION TO DISMISS AND TO STRIKE
## AND SUPPORTING MEMORANDUM OF LAW

Defendants June Bush, Laura M. Bush, Candace Pearl, Pearl Productions, Inc. and

Opulent Detail Designs, Inc., through their undersigned attorneys, move under Federal Rule

of Civil Procedure 12 for entry of an order dismissing portions of Plaintiffs' Complaint for

failure to state a claim and striking from Plaintiffs' Complaint numerous unfounded requests

for attorneys' fees. In support, Defendants submit the following memorandum of law.

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs are a parent company and two of its subsidiaries. Plaintiffs are engaged in

the business of producing materials to be used in direct mail fundraising campaigns.  A

significant part of Plaintiffs' business is direct mail solicitation on behalf of charities.

Defendant June Bush ("Ms. Bush") worked for Plaintiff Focus Direct, LLC ("Focus Direct")

and its predecessors for 33 years, until she was constructively terminated in 2011.

1

Plaintiffs have filed this action primarily to enforce a Noncompetition and Confidentiality Agreement ("CNC") signed by Ms. Bush. The other Defendants are, generally, alleged to be working with Ms. Bush in violation of the CNC or to have received confidential or trade secret information from her.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In pleading those facts " labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n. 43 (11th Cir.2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims"). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III.   APPLICABLE LAW

Plaintiffs spend a substantial part of their motion for preliminary injunction conducting a choice of law analysis, so it seems appropriate to address that issue here. (Dkt. No. 3 at pp. 6-8.) Plaintiffs conclude that Delaware law applies to claims against Ms. Bush arising out of the CNC based on a choice of law clause in that document, and that Florida law applies to everything else. (*Id.*) Defendants agree, with one important caveat: The CNC is invalid, which means the choice of law provision in it is invalid as well. If the CNC is valid, so is the choice of law clause (as to claims against Ms. Bush only because she is the only

2

Defendant who signed it).

## IV.   **LEGAL ARGUMENT**

The various counts in Plaintiffs' Complaint must be dismissed for the reasons stated below.

### A.   **The CNC Terminated in 2005.**

A substantial portion of Plaintiffs' Complaint is predicated on the CNC executed on July 15, 2005.  Paragraph eleven of the CNC states: "this Agreement shall automatically terminate in the event closing under the Equity Purchase Agreement is not consummated by July 29, 2005." (Dkt. No. 1, Ex. A ¶ 11.)  Plaintiffs concede in their Verified Complaint that the closing under the Equity Purchase Agreement ("EPA") was not consummated by July 29, 2005. [1]  (Dkt. No. 1 at ¶ 66.)

By its own terms, the CNC terminated automatically when the closing did not occur by July 29, 2005.  "When the parties to a contract have agreed to a termination clause, the clause should be enforced as written." *In re Wilson*, 423 B.R. 559, 567 (Bankr. M.D. Fla. 2010) (quoting *Andrx Therapeutics, Inc. v. Mallinkrodt, Inc.*, No. 06-60210-CIV, 2007 WL 1362778, 3 (S.D. Fla. May 9, 2007)); *Seaford Golf & Country Club v. E.I. duPont de Nemours & Co.*, 925 A.2d 1255, n. 14 (Del. 2007) (internal citation omitted) (court must enforce as written unambiguous contract provision).  It is beyond dispute that the CNC automatically terminated on July 30, 2005.

Nonetheless, Plaintiffs argue that Ms. Bush waived her right to assert that the CNC terminated in 2005.  According to Plaintiffs, Ms. Bush was offered benefits in a separate

---

[1]  Plaintiff DMH, through its President John Rodewald, verified under penalty of perjury all of the facts alleged in paragraph 66.

contract, the EPA, and those benefits were "conditioned on [Bush] signing the [CNC]." (Dkt. No. 1 at ¶ 66.)   Thus, Plaintiffs conclude, Ms. Bush somehow "waived" the automatic termination provision in section 11 (**after** the termination had already occurred) by her conduct.  Plaintiffs' strained argument fails for a number of reasons.

Waiver is most commonly defined as "the voluntary and intentional relinquishment of a known right." *Petersen v. The Florida Bar*, 720 F. Supp. 2d 1351, 1358 (M.D. Fla. 2010) (quoting *Raymond James Financial Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005)); *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982).[2] An implied waiver exists only where there is "a clear, unequivocal, and decisive act of the party demonstrating relinquishment of the right." *Dirienzo v. Steel Partners Holdings L.P.*, CIV.A. 4506-CC, 2009 WL 4652944 (Del. Ch. 2009) (internal citations omitted); *Am. Somax Ventures v. Touma*, 547 So. 2d 1266, 1268 (Fla. 4th DCA 1989) (waiver will be implied only where the party's conduct "make[s] out a clear case of waiver.")   A waiver will not be implied, however, based on ambiguous acts, and "a party's silence is never sufficient to establish a waiver where the party had no duty to speak." *Dirienzo*, 2009 WL 4652944; *In re SFD @ Hollywood, LLC*, 411 B.R. 788 (Bankr. S.D. Fla. 2009).

First, and most importantly, the fact that the CNC automatically terminated is just that—a historical fact—not a "right" that is subject to waiver.   Waiver might apply if the late closing made the CNC end only after some precedent act (*e.g*, Bush had the right to do something, or not do something, that would terminate the Agreement), but there was nothing

---

[2] Ms. Bush does not concede that Delaware law governs whether the doctrine of waiver could revive the CNC once the CNC, and the choice of law clause in it, terminated.  Florida law and Delaware law are in accord on this almost universal point, however, so it is not necessary to resolve the choice of law question before addressing the legal issue.

to waive because the termination had already happened.[3]   Second, there were no "benefits" for Ms. Bush under the CNC, only burdens.  Plaintiffs attempt to blur this distinction by directing the Court's attention to the EPA and alleged benefits therein.[4]   Third, Plaintiffs assert that the benefits offered under the EPA were "conditioned on [Bush] signing the [CNC]."   (Dkt. No. 1 at ¶ 66.)  Admittedly, Bush *did* sign the CNC; the CNC just contained a termination clause that Plaintiffs now want to ignore.  Finally, the single fact that allegedly supports Plaintiffs' waiver argument—Bush accepting benefits under the separate EPA—falls woefully short of the "clear, unequivocal, and decisive act" necessary to prove an implied waiver.   *Dirienzo*, 2009 WL 4652944, 6.  If there has been any waiver on these facts, *Plaintiffs* waived the right to claim that the continued viability of the CNC was necessary to a tender of benefits under the EPA when Plaintiffs tendered those benefits to Bush knowing the CNC had terminated.

The CNC terminated in 2005, so all of Plaintiffs' claims predicated on that agreement must be dismissed with prejudice.  Those claims are:  (i) all of Count I; (ii) all of Count II; (iii) all of Count III; (iv) Count IV, to the extent it is based on Bush's alleged failure to return property deemed confidential by the CNC; (v) all of Count IX; and (vi) Count X, to the extent it is predicated on acts that would be wrongful only if the CNC was in force.

---

[3] Plaintiffs incorrectly characterize the termination clause as a condition **precedent** in order to give their waiver argument some semblance of credibility.   The clause is actually an express condition **subsequent**.  *See Gunderson v. Sch. Dist. of Hillsborough County*, 937 So. 2d 777, 779 (Fla. 1st DCA 2006) (explaining that a condition precedent is a fact or event that must occur before a contract becomes effective whereas a condition subsequent is a fact or event that brings an end to an existing contract).

[4] Notably, Plaintiffs on the one hand argue that the CNC is independent of any other agreement when they seek to avoid a fatal defense to its enforceability (Dkt. No. 3 at p. 16, n 5), but on the other hand, argue that it is part and parcel of a larger set of agreements when it supports their arguments.

**B.**     <u>**Count V Fails Because Laura Bush Was Not Plaintiffs' Agent.**</u>

Plaintiffs have sued Ms. Bush's daughter, Laura Bush, in Count V for breach of duty of loyalty. Yet, Plaintiffs concede that Laura Bush was not their employee. Instead, Plaintiffs argue that since Laura Bush was employed by Ms. Bush as her assistant, and since Ms. Bush worked for Plaintiffs, Laura Bush was Plaintiffs' agent. (Dkt. No. 1 at ¶ 95.) This theory fails as a matter of law.

The elements of an actual agency relationship are: (i) the principal's acknowledgment that the agent will act for him; (ii) the agent's agreement to do so; and (iii) control by the principal over the actions of the agent. *Ilgen v. Henderson Properties, Inc.*, 683 So. 2d 513, 515 (Fla. 2d DCA 1996) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)). Plaintiffs have not pled any of these elements. Florida law supports a limited duty of loyalty owed to an employer by an employee, but that duty does not extend under the circumstances alleged here, nor does the doctrine of agency. Count V must be dismissed.

**C.**     <u>**Count VIII Fails to State a Claim Against Defendants Other Than Ms. Bush.**</u>

Count VIII alleges tortious interference with various contractual and business relationships. In paragraph 114, Focus Direct and Diamondback sue all of the Defendants for interfering with those companies' business relationship with St. Labre.

To plead a claim for tortious interference, a plaintiff must allege the following elements: (i) plaintiff had an existing business relationship; (ii) defendant knew about the relationship; (iii) defendant intentionally and without justification interfered with the relationship; and (iv) damage to the plaintiff caused by the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (internal citation

omitted).   However, "[c]ompetition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will." *Advantage Digital Sys., Inc. v. Digital Imaging Services, Inc.*, 870 So. 2d 111, 116 (Fla. 2d DCA 2003).

Plaintiffs have simply pled that the Defendants induced St. Labre to stop doing business with them, and start doing business with Pearl.  Plaintiffs have not, however, pled any facts in support of their bare legal conclusion that Defendants' conduct was "deceitful, dishonest, and/or disloyal."  (Dkt. No. 1 at ¶ 114.)  Those missing factual allegations are critical because legitimately marketing a competing business is not actionable.  Count VIII must be dismissed as to the Defendants other than Ms. Bush because Plaintiffs' allegations fall short of the plausibility standard articulated in *Twombly* and the cases following it.

**D.     Count X Must be Dismissed Because Plaintiffs Do Not Reference Which State's Deceptive and Unfair Trade Practices Act They Are Suing Under.**

Count X attempts to state a claim against all Defendants for deceptive and unfair trade practices.  This is a statutory claim; there is no common law cause of action for deceptive and unfair trade practices.  Plaintiffs do not, however, specify which state's deceptive and unfair trade practices act they are suing under.  That distinction matters because the Plaintiffs are Delaware entities located in Texas, Iowa, and Maryland, and the Defendants are located in Florida.  Defendants cannot frame a response without knowing which state's law Plaintiffs are suing under, so Count X must be dismissed.  Alternatively, Defendants request that this argument be treated as a motion for more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.

7

**E.**     **Plaintiffs' Claims For Attorneys' Fees Must be Stricken.**

Federal Rule of Civil Procedure 12(f) provides, in part, that courts may strike from a pleading any "immaterial or impertinent" material.  Florida federal courts recognize the general rule that attorneys' fees cannot be awarded unless provided for by contract or statute. *See, e.g., Conn. Indem. Co. v. Palivoda*, No. 04-CV-1044T-24MSS, 2004 WL 3661069, 4 (M.D. Fla. Aug. 24, 2004); *Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995).  Claims for attorneys' fees should be stricken where the plaintiff does not plead the basis upon which they should be awarded. *See Palivoda*, 2004 WL 3661069 at 4 (striking claims for attorneys fees where there was no contractual or statutory right to such an award); *Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. at 907 (same).

Plaintiffs have demanded attorneys' fees in the prayer for relief following each of the ten counts in their Complaint, but Plaintiffs have not specified in *any* of those counts the basis for their fee claims.  Defendants could ordinarily infer the basis of those claims with some confidence, but here there are numerous, diversely-domiciled parties and Plaintiffs (presumably intentionally) did not include in their Complaint *a single reference* that would indicate which state (or states) law their claims are based on.  It is therefore impossible to determine whether any of Plaintiffs' fee claims have a basis, so those claims should be stricken. *Conn. Indem.*, 2004 WL 3661069 at 4 (striking attorneys' fee claim from complaint because "Plaintiff *has not alleged* a statute or contract provision that allows for the recovery of attorney's fees.") (Emphasis added).  This point may seem somewhat technical, but in a world where legal fees can equal or exceed the amount in controversy, it is sound policy to manage litigants' expectations.

8

## VI.  <u>CONCLUSION</u>

For the reasons set forth in the foregoing memorandum of law, Defendants respectfully request that the Court enter an Order (1) dismissing portions of Plaintiffs' Complaint for failure to state a claim, and (2) striking from Plaintiffs' Complaint numerous unfounded claims for attorneys' fees, together with such additional relief as the Court deems just and proper.

Respectfully submitted,

<u>s/Lara J. Tibbals</u>
David T. Knight
Florida Bar No. 0181830
dknight@hwhlaw.com
Lara J. Tibbals
Florida Bar No. 129054
ltibbals@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Post Office Box 2231
Tampa, Florida 33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900

Attorneys for June Bush, Laura M. Bush,
Candace Pearl, Pearl Productions, Inc. and
Opulent Detail Designs, Inc.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 17, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I HEREBY FURTHER CERTIFY that a true and correct copy of the foregoing was provided by U.S. MAIL this 17th day of February, 2012, to:

**Cameron Shilling**
McLane, Graf, Raulerson & Middleton
PO Box 326
Manchester, NH 03105-0326

s/Lara J. Tibbals
Attorney

2915285.1

10